UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| William Pitt Real Estate, LLC d/b/a William Pitt Sotheby's International Realty<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Fingelly Real Estate, LLC,<br>Victoria Fingelly, and The Higgins Group, Inc. d/b/a Higgins Group Real Estate<br><br>　　　　　　　　　　　　Defendants. | CIVIL ACTION NO.<br>3:21-cv-00314<br><br><br>JURY DEMAND |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff William Pitt Real Estate, LLC d/b/a William Pitt Sotheby's International Realty ("Plaintiff" or "William Pitt") for its complaint against Defendants Fingelly Real Estate, LLC, its member Victoria Fingelly, and The Higgins Group, Inc. d/b/a Higgins Group Real Estate (individually and collectively, "Defendants"), hereby alleges as follows:

**NATURE OF THE ACTION**

1.　This is an action for trademark infringement, false designation of origin, unfair competition, and unfair and deceptive business practices arising under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq*. (the "Lanham Act"), common law trademark infringement, and state unfair competition in violation of the Connecticut Unfair Trade Practices Act against Defendants for their improper and unauthorized commercial use and exploitation of trademarks that are confusingly similar to Plaintiff's trademarks on or in connection with the offer and provision of goods and/or services.

2.　Plaintiff brings this action to protect its reputation for selling products and services of the highest quality, prevent deception of the consuming public by Defendants, retain control over the substantial goodwill associated with Plaintiff's business and trademarks, and to avoid

1

irretrievably lost sales.

3. Plaintiff hereby seeks, *inter alia*, a permanent injunction against Defendants' continued unauthorized, improper and willful commercial use and exploitation of Plaintiffs' trademarks and all damages and profits arising from Defendants' past, present, and future infringement and unfair competition, including all statutory damages, as well as Plaintiff's attorneys' fees and costs for having to bring this suit to enforce its rights, and pre- and post-judgment interest.

**PARTIES**

4. Plaintiff is a Connecticut limited liability company with its principal place of business at 170 Washington Blvd., Stamford, CT, 06902.

5. Upon information and belief, Defendant Fingelly Real Estate, LLC ("Fingelly LLC") is a Connecticut limited liability company with its principal place of business at 1437 Fairfield Beach Road, Fairfield, CT, 06824.

6. Upon information and belief, Defendant Victoria Fingelly is an individual having an address at 1437 Fairfield Beach Road, Fairfield, CT, 06824.

7. Upon information and belief, Defendant Victoria Fingelly owns and operates Fingelly LLC.

8. Upon information and belief, Defendant Victoria Fingelly exercises control over Fingelly LLC and is a moving, conscious, dominant, and active force behind Fingelly LLC's unlawful conduct complained of herein, which unlawful conduct Defendant Victoria Fingelly has engaged in for the benefit of Fingelly LLC and for her own individual gain and benefit.

9. Upon information and belief, Defendant The Higgins Group, Inc. ("Higgins Group") is a Connecticut corporation with its principal place of business at 1499 Post Road,

2

Fairfield, CT, 06824. Upon information and belief, Higgins Group does business as "Higgins Group Real Estate."

10. Upon information and belief, Defendants are doing business through at least the following websites:

https://www.higginsgroup.com/;

https://www.higginsgroup.com/?aios_agent=victoria-fingelly;

https://www.higginsgroup.com/?aios_agent=catherine-fingelly-granneberg;

https://www.higginsgroup.com/?aios_agent=nicolas-granneberg;

https://www.higginsgroup.com/?aios_agent=bill-bodine; and

https://www.higginsgroup.com/?aios_agent=tim-dailey-fingelly-real-estate.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Plaintiff's federal claims relating to trademark infringement and false designation of origin under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

12. This Court has supplemental jurisdiction over Plaintiff's common law and state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because these claims are so related to Plaintiffs' federal claims that they form a part of the same case or controversy. The Court's authority to award the requested equitable relief can be found at least in 15 U.S.C. § 1116(a), 28 U.S.C. § 1651(a), and this Court's inherent equitable power.

13. This Court has personal jurisdiction over Defendants by virtue of their residency in this forum, systematic and continuous contacts with this forum, and because Defendants have purposely availed themselves of the privileges of this forum at least by (1) having their principal place of business in this forum, (2) offering their goods and services under an infringing trademark

throughout this forum, (3) committing tortious acts within the state, and (4) having a website accessible to consumers in this forum.

14. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) at least because a substantial part of the wrongful events giving rise to this action took place in this District, Plaintiff has suffered harm in this District, and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

**A.   Plaintiff and Its Trademarks.**

15. Plaintiff is a company based in Stamford, Connecticut. Plaintiff is a premier real estate brokerage firm. Plaintiff and its predecessor companies have been dedicated to providing exceptional services in the real estate sector for decades. Plaintiff operates approximately 26 brokerages and more than 1,000 sales associates through which it provides deep knowledge of real estate markets and has a proven track record of successfully handling the sale of fine properties in all price categories.

16. Plaintiff owns common law rights in several trademarks, including its NICHOLAS H. FINGELLY REAL ESTATE trademark, in word, mark, and stylized form (as shown below):



17. Plaintiff's trademark rights in standard character and stylized form are individually and collectively referred to as Plaintiff's Mark.

18. Plaintiff acquired its rights in Plaintiff's Mark by assignment ("the Assignment") from Nicholas H. Fingelly Real Estate, Inc. ("Fingelly, Inc."), a former

4

Connecticut corporation. A copy of the assignment is attached hereto as **Exhibit A**.

19. The date of the assignment is August 5, 2015.

20. The Assignment was part of a larger acquisition ("the Acquisition") of Fingelly, Inc. by Plaintiff, which also closed on or around August 5, 2015.

21. Pursuant to the Assignment and the Acquisition, Plaintiff acquired all right, tittle, and interest in and to Plaintiff's Mark and the goodwill associated therewith, including domain registrations related to Fingelly, Inc.

22. As a further part of the Acquisition, Defendant Victoria Fingelly signed a Non-Solicitation and Non-Competition Agreement ("the Non-Compete").

23. The Non-Compete was a material aspect of the Acquisition and a material aspect of preserving the value of the business and goodwill of the business Plaintiff was to acquire.

24. As a further part of the Acquisition, Defendant Victoria Fingelly signed a Broker-Sales Person Contract ("Sales Contract").

25. Defendant Victoria Fingelly was therefore aware of the terms of the Acquisition, Assignment, and the Non-Compete, and the materiality of each to the Acquisition.

26. In addition to Victoria Fingelly, other members of Fingelly, Inc. joined Plaintiff pursuant to the acquisition, including Virginia Fingelly, who was the sole shareowner of Fingelly, Inc. at the time of the Acquisition, and Catherine Fingelly Granneberg.

27. Virginia Fingelly's, Catherine Fingelly Granneberg's, and Defendant Victoria Fingelly's employment with Plaintiff was one way in which the goodwill of Fingelly, Inc. was transferred to and utilized by Plaintiff.

28. Plaintiff's acquisition of Fingelly, Inc. was a significant and newsworthy event in the real estate industry.

29. Plaintiff has advertised the Acquisition on its website since on or around the Acquisition's closing. Attached as **Exhibit B** is a website with the title, "A Warm Welcome to Nicholas H. Fingelly Real Estate."

30. As stated on this webpage, acquisition of Plaintiff's Mark and the goodwill therein was significant as Nicholas Fingelly had been building a brand around Plaintiff's Mark with great success in the industry since 1948.

31. Fingelly, Inc. was formed at least as early as 1992, from which time on goodwill in Plaintiff's Mark continued to increase.

32. Plaintiff has maintained use of Plaintiff's Mark in conjunction with the sale of real estate services since on or around the Acquisition's Closing.

33. A Google search of "Nicholas H. Fingelly Real Estate" returns results for Plaintiff and Plaintiff's website. **Exhibit C** is a copy of the results of this Google search.

34. A Google search of "Fingelly Real Estate" returns similar results. **Exhibit D** is a copy of the results of this Google search.

35. On the right-hand side of these search results is an indication of the "Nicholas H Fingelly Real Estate" business along with an icon to click on "website." Clicking this icon leads consumers to Plaintiff's webpage comprised in **Exhibit B**.

36. Further, Plaintiff has filed applications for federal trademark registrations on Plaintiff's Mark. Attached as **Exhibit E** are copies of Plaintiff's applications.

37. Having acquired all goodwill and other rights in Plaintiff's Mark, Plaintiff first use in commerce is at least as early as the date of assignment on August 5, 2015.

38. Plaintiff possesses all rights, titles, and interests in and to Plaintiff's Mark. Plaintiff's use of Plaintiff's Mark has continued uninterrupted. Plaintiff has never abandoned its

use of the Plaintiff's Mark for real estate agency and marketing services.

39. Plaintiff maintains active webpages located at https://www.williampitt.com/ and https://www.williampitt.com/our-company/our-brand/. Plaintiff's use of Plaintiff's Mark includes use on these webpages. *See* **Exhibit F** for screenshots of Plaintiff's webpages.

40. Plaintiff's Mark is an inherently distinctive trademark to both the public and those in the trade in connection with Plaintiff's products and services. Plaintiff's Mark serves as a designator of origin of products and services originating from, sponsored by, or licensed by Plaintiff.

41. Over the years, significant money and resources have been spent on advertising and promoting goods and services under Plaintiff's Mark.

42. As a result of the longstanding, widespread, and continuous use, marketing and promotion of products and services under Plaintiff's Mark, both the public and those in the trade use Plaintiff's Mark to identify and refer to Plaintiff and Plaintiff's products and services. Plaintiff's Mark is widely recognized as a designation of source for Plaintiff's high-quality products and services.

**B.     Defendants' Intentional and Willful Infringing Activities and Bad Faith Conduct.**

43. Upon information and belief, nearly immediately after expiration of Defendant Victoria Fingelly's Non-Compete, Defendant Victoria Fingelly formed Fingelly LLC, which she operates under Higgins Group. A copy of the Connecticut business registration page for Fingelly LLC is attached as **Exhibit G**. Copies of webpages associated with Defendants are attached as **Exhibit H**.

44. Defendants even have a listing with Higgins Group that uses the phrase "Nicholas Fingelly Real Estate." *See* **Exhibit I**.

45. Pursuant to formation of Fingelly LLC, Defendants commenced use of FINGELLY REAL ESTATE as a trademark in standard character and stylized form (as shown below):



*See* **Exhibit H**.

46. Defendants' trademark in standard character and stylized form are individually and collectively referred to as "Defendants' Marks" or "the Infringing Marks."

47. Defendants' use of the Infringing Marks in the manner described herein creates the wrongful impression that Defendants or their goods or services are authorized, sponsored, or approved by Plaintiff even though they are not. This confusion causes irreparable harm and damage to Plaintiff and unjustly enriches Defendants.

48. Upon information and belief, Defendants have been unjustly enriched by the illegal use and misappropriation of Plaintiff's Mark for Defendants' own financial gain. Additionally, upon information and belief, Defendants have unfairly benefited and profited from Plaintiff's outstanding reputation, as well as its significant advertising and promotion of its goods and services and Plaintiff's Mark, not to mention renumeration from the Acquisition.

49. Defendants commenced use of the Infringing Marks in connection with real estate brokerage and marketing services—the same services for which Plaintiff uses Plaintiff's Mark.

50. Defendants adopted Defendants' Marks with knowledge of Plaintiff and Plaintiff's use of Plaintiff's Mark.

51. As depicted below, Defendants' Marks closely mirror Plaintiffs' Mark:

| Plaintiff's Mark | Defendants' Marks |
|---|---|
| NICHOLAS H. FINGELLY REAL ESTATE | FINGELLY REAL ESTATE |
| [NICHOLAS H. FINGELLY REAL ESTATE logo] | [FINGELLY REAL ESTATE HIGGINS GROUP PRIVATE BROKERAGE logo] |

52. Aside from copying words of Plaintiff's Mark, in the stylized version of the respective marks, Defendants mirrored elements such as font and use of a double-bar in conjunction with the stylized images.

53. Plaintiff does not consent, and has never consented, to Defendants' unauthorized adoption and commercial use of Plaintiff's Mark.

54. Defendants' use of the Infringing Marks is likely to cause and/or has actually caused confusion as to the affiliation, connection, or association of Defendants or their products or services with Plaintiff or its products or services, and/or as to the origin, sponsorship, or approval of Defendants' products by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill, and sales and the unjust enrichment of Defendants.

55. On January 21, 2021 and February 12, 2021, Plaintiff, through its attorneys, sent Defendants letters placing them on notice of Plaintiff's rights in Plaintiff's Mark, as well as demanding that Defendants cease and desist from all use of the Infringing Marks in any infringing manner. *See* **Exhibit J** for a true and correct copy of Plaintiff's January 21 and February 12, 2021 letters.

56. On February 18, 2021, Defendants refused in writing to comply with Plaintiff's demands.

57. Upon information and belief, today Defendants display and use the Infringing Mark

on their websites, social media, products, and in other marketing and promotional materials.

58. Defendants have been and are using the Infringing Mark on their website(s) to sell and offer to sell real estate and marketing services. Select examples of Defendants' marketing appears in **Exhibit H**.

59. Other realtors that use Defendants' Infringing Mark include Catherine Fingelly Granneberg, Nicholas Granneberg, Bill Bodine, and Tim Dailey. Upon information and belief, the use of Defendants' Infringing Mark by these realtors is controlled, directed, ratified, authorized, and/or approved by Defendants.

60. Plaintiff's Mark and Defendants' Marks are highly similar.

61. Plaintiff and Defendants work in similar industries. For example, Plaintiff and Defendants each work in real estate marketing and brokerage services.

62. Plaintiff and Defendants provide similar services, namely real estate marketing and brokerage services.

63. Upon information and belief, Plaintiff and Defendants' products and services serve a similar function, namely aiding customers in purchasing real estate.

64. Plaintiff and Defendants offer their products and/or services to the same and/or highly similar consumers through the same and/or highly similar channels of trade, including on the Internet.

65. Plaintiff and Defendants advertise, promote, and market their respective products and/or services in the same manner.

66. Plaintiff and Defendants serve customers in the same or similar business fields, including residential and commercial real estate.

67. Plaintiff and Defendants are physically located only a few miles from each other.

68. The foregoing factual circumstances have caused and/or are likely to actually cause confusion and deceive consumers into thinking that Defendants' products and/or services are sold by or affiliated, connected or otherwise associated with Plaintiff, when they are not.

69. Additionally, at least because of the confusion and/or likelihood of confusion resulting from Defendants' use of the Infringing Marks, any defect, objection to, or fault found with Defendants' goods and/or services sold or provided under the Infringing Marks would necessarily reflect on and seriously injure the reputation Plaintiff has established for its mark and business.

70. Upon information and belief, at all times relevant to this action, including when Defendants first commenced use of Plaintiff's Mark, Defendants knew of the prior adoption and widespread commercial use of Plaintiff's Mark by Plaintiff, and Defendants knew of the valuable goodwill and reputation acquired by Plaintiff in connection with Plaintiff's Mark. Defendants' infringement of Plaintiff's Mark is therefore willful.

71. Upon information and belief, Defendants intentionally and willfully adopted the Infringing Mark to confuse consumers and trade off Plaintiff's well-known brand and good will.

72. Defendants' use of the Infringing Mark is unauthorized and intentionally designed to mimic Plaintiff's Mark so as to cause confusion regarding Defendant' affiliation, association and/or sponsorship by Plaintiff and likely to cause confusion that Defendants' goods and services are approved by Plaintiff, all to the detriment of Plaintiff.

73. Upon information and belief, Defendants intentionally and willfully adopted the Infringing Mark to trade off Plaintiff's well-known brand and good will because Plaintiff and Defendants (i) work in similar industries, (ii) provide similar goods and/or goods serving similar functions, (iii) to the same or similar customers, and (iv) in the same or similar business fields.

74. Upon information and belief, Defendants intentionally and willfully adopted the Infringing Marks to confuse consumers at trade shows and in Plaintiff and Defendants' customers' own facilities, at which, upon information and belief, Plaintiff and Defendants' products are near in proximity.

75. Defendant Victoria Fingelly has been well aware of Plaintiff, Plaintiff's Mark, and Plaintiff's ownership thereof since at least the Acquisition's closing in August 2015.

76. Upon information and belief, Defendant Victoria Fingelly is the front person for Fingelly LLC.

77. Upon information and belief, Defendant Victoria Fingelly oversees the whole Fingelly LLC company.

78. Upon information and belief, Defendant Victoria Fingelly is in charge of business development at Fingelly LLC.

79. Upon information and belief, Defendant Victoria Fingelly owns, operates, and exercises control over Fingelly LLC.

80. Upon information and belief, Defendant Victoria Fingelly is the moving, conscious, dominant, and active force behind Defendants' unlawful conduct complained of herein, which unlawful conduct Defendant Victoria Fingelly engaged in for the benefit of Fingelly LLC and her own individual gain and benefit.

81. Upon information and belief, Defendant Victoria Fingelly directs, ratifies, authorizes, and approves Fingelly LLC's unlawful conduct complained of herein.

82. Since the inception of Fingelly LLC, Defendant Victoria Fingelly has been the driving force behind the trademark infringement activity of Fingelly LLC.

83. Upon information and belief, Defendant Victoria Fingelly supervises all business

aspects of Fingelly LLC concerning Fingelly LLC's advertising and use of Defendants' Marks.

84. Upon information and belief, Defendant Victoria Fingelly intentionally directs Fingelly LLC employees to sell goods and services under the confusingly similar Infringing Marks despite knowing these goods and services infringe Plaintiff's Marks.

85. Upon information and belief, despite knowing of Plaintiff's rights in Plaintiff's Marks, Defendant Victoria Fingelly, on behalf of Fingelly LLC and also in her individual capacity, insists on continuing Fingelly LLC's infringing activities and directing, authorizing, and ratifying Fingelly LLC's infringing activities.

86. Upon information and belief, Defendant Victoria Fingelly authorizes and approves Fingelly LLC's infringing activities.

87. Upon information and belief, Defendant Victoria Fingelly is the principal architect of Fingelly LLC's infringement.

88. Upon information and belief, Defendant Victoria Fingelly has ratified, consented to, and directed the infringing activities of Fingelly LLC and should, therefore, be held liable as an owner, officer, and conscious driving force of Fingelly LLC's infringing activities.

89. In view of the above, Plaintiff requests this Court find Defendant Victoria Fingelly personally liable for her infringing activity being the driving force behind the trademark infringement being perpetrated by Fingelly LLC against Plaintiff.

**COUNT I**
**Federal Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a)**

90. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

91. Plaintiff's Mark is entitled to protection under Section 43(a) of the Lanham Act.

92. Defendants' actions complained of herein are likely to cause and have actually

caused confusion as to the affiliation, connection, or association of Defendants or their products or services with Plaintiff or its products or services, and/or as to the origin, sponsorship, or approval of Defendants' products by Plaintiff.

93. Upon information and belief, Defendants have used, are using, and intend to continue using now and in the future in commerce Plaintiff's Mark for the offer and provision of goods and services in such a way that has and will continue to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

94. Defendants' actions complained of herein constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

95. Defendants' actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Plaintiff to suffer irreparable harm; Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to and seeks injunctive relief pursuant to 15 U.S.C. § 1116.

96. Plaintiff has also sustained damages as a direct and proximate result of Defendants' actions complained of herein in an amount to be proven at trial, including without limitation Defendants' profits and/or gains of any kind, including intangible gains, resulting from Defendants' unlawful acts.

97. Defendants' actions complained of herein have been willful, intentional, and made in bad faith. Plaintiff is therefore entitled to enhanced and exemplary damages, including treble its actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT II
## Common Law Trademark Infringement

98. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

99. This clam is against Defendants for common law trademark infringement.

100. Plaintiff's Mark enjoys common law rights in Connecticut and throughout the United States. These rights are senior and superior to any rights which Defendants may claim.

101. Defendants use of Plaintiff's Mark is unauthorized and intentionally designed to mimic Plaintiff's Mark so as to cause confusion regarding Defendants' affiliation, association, and/or sponsorship by Plaintiff and to cause confusion that Defendants' services are approved by Plaintiff, all to the detriment of Plaintiff.

102. Both Plaintiff and Defendants are engaged in trade and commerce in the state of Connecticut.

103. Defendants' use of the Infringing Marks has caused and/or is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods or services have the sponsorship, endorsement, or approval of Plaintiff.

104. Defendants, by virtue of their acts as alleged above, have willfully, knowingly, maliciously, and intentionally engaged in acts of unfair competition and trademark infringement under the common law of Connecticut.

105. Defendants' infringement and unfair competition will continue unless enjoined by the Court.

106. Defendants' actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Plaintiff to suffer irreparable harm; Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to and seeks injunctive relief.

107. Plaintiff has also sustained damages as a direct and proximate result of Defendants' actions complained of herein in an amount to be proven at trial, including without limitation Defendants' profits and/or gains of any kind, including intangible gains, resulting from Defendants' unlawful acts.

## COUNT III
### Trademark Infringement and Unfair Competition Under Connecticut Law

108. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

109. Defendants' acts as described above constitute unfair competition in violation of Conn. Gen. Stat. § 42-110 (the Connecticut Unfair Trade Practices Act ("CUTPA")).

110. Defendants' use of Plaintiff's Mark presents Defendants' goods and services as those authorized or sponsored by Plaintiff, who has not provided such sponsorship or authorization to Defendants.

111. Defendants' acts permit and accomplish confusion, mislead and deceive the public as to the source of Defendants' goods and services, and falsely suggest a connection with Plaintiff, thus constituting unfair competition with Plaintiff in violation of Connecticut law. These acts have caused and will continue to cause Plaintiff irreparable harm unless enjoined by the Court.

112. Plaintiff has no adequate remedy at law.

113. Defendants' infringement and unfair competition will continue unless enjoined by the Court.

114. Defendants committed their unfair and deceptive acts and practices knowingly and willfully.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants on each and every count in this Complaint as follows:

    A.  adjudging that Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1125(a), and have engaged in common law trademark infringement and unfair competition, and violated CUTPA;

    B.  enjoining Defendants, their successors, agents and employees, and anyone acting in active concert or participation with or at the behest or direction of any of them, from using the Infringing Marks or any trademark that is confusingly similar to Plaintiff's Mark, including the enjoining Defendants from:

        i.  advertising, marketing, promoting, selling, offering for sale or authorizing any third party to advertise, market, promote, sell and offer for sale any goods or services bearing Plaintiff's Mark, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Mark;

        ii.  engaging in any activity that infringes Plaintiff's rights in Plaintiff's Mark;

        iii.  engaging in any activity that constitutes unfair competition with Plaintiff;

        iv.  using or authorizing any third party to use any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities are in any way sponsored, licensed, or authorized by or affiliated or connected with Plaintiff;

      v. making or displaying any statement, representation, or depiction that is likely to lead the public or those in the trade to believe that the products or services promoted, offered, or sponsored by Defendants are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff, or that Plaintiff's products and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendants;

      vi. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating Plaintiff's Mark or any other mark that infringes or is likely to be confused with Plaintiff's Mark, or any products of Plaintiff; and

      vii. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in above subparagraphs;

    C. ordering Defendants to file with the Court and serve on Plaintiff's counsel within 30 days after service of any injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

    D. ordering Defendants to deliver up for destruction any and all products, circulars, price lists, labels, brochures, business cards, signs, prints, packages, wrappers, pouches, advertising matter, promotional materials, and other materials in the possession or control of

Defendants bearing Plaintiff's Mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiff's Mark;

E. ordering Defendants to remove and/or permanently disable and/or destroy all Internet websites, domain names, social media posts, keyword advertisements, other online marketing or promotions, and all other materials bearing or displaying the Infringing Marks or any trademark that is confusingly similar to Plaintiff's Mark;

F. declaring that Defendants' false advertising, trademark infringement, unfair competition and other unfair and deceptive acts were knowing, intentional, and willful;

G. awarding Plaintiff compensation for any and all damages, injury, or harm incurred as a result of Defendants' unlawful conduct, including without limitation full restitution and/or disgorgement of all profits and benefits that may have been obtained by Defendants as a result of their wrongful conduct and unjust enrichment;

H. declaring that this is an exceptional case under 15 U.S.C. § 1117;

I. awarding Plaintiff treble and/or enhanced damages resulting from Defendants' willful and intentional conduct under at least 15 U.S.C. § 1117;

J. awarding Plaintiff punitive and exemplary damages under at least 15 U.S.C. § 1117;

K. assessing Plaintiff's costs of this action and Plaintiff's attorneys' fees against Defendants under at least 15 U.S.C. §§ 1117, and 1125;

L. awarding Plaintiff treble damages, punitive damages, and attorneys' fees under Conn. Gen. Stat. § § 42-110.

M. awarding Plaintiff pre-judgment and post-judgment interest on each and every monetary award; and

N. ordering or awarding any other such relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issue and claims so triable.

Dated: March 10, 2021                    Respectfully submitted,


                                         */s/ Stephen F.W. Ball, Jr.*
                                         Stephen F.W. Ball, Jr., ct28234
                                         Benjamin N. Luehrs, ct30862
                                         600 Summer Street
                                         Stamford, CT 06901
                                         Tel: 203-703-0800
                                         Fax: 203-703-0801
                                         Email: litigation@whipgroup.com
                                         sball@whipgroup.com
                                         bluehrs@whipgroup.com

                                         *Attorneys for Plaintiff*